IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN C. MCDOUGAL, JR.,                    CV 08-3076-MA

      Plaintiff,                    OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

      Defendant.

PHIL STUDENBERG
200 Pine St.,
Klamath Falls, OR 97601
(503) 531-5370

      Attorneys for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1117

1 - OPINION AND ORDER

LEISA A. WOLF
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3621

       Attorneys for Defendant

MARSH, Judge.

     Plaintiff John C. McDougal, Jr. seeks judicial review of
the Commissioner's final decision denying his October 9, 2002,
application for disability insurance benefits under Title II of
the Social Security Act, 42 U.S.C. §§ 401-34.

     Plaintiff alleges he has been disabled since January 1,
1993, because of panic attacks, skin disorders, and breathing
problems.  The last date on which plaintiff was insured was
September 30, 1999.  Accordingly, he must establish he became
disabled on or before that date.  Burch v. Barnhart, 400 F.3d
676, 679 (9th Cir. 2005).

     Plaintiff's application for disability benefits was denied
initially and on reconsideration.  On March 17, 2006, the
Administrative Law Judge (ALJ) held an evidentiary hearing and
on July 22, 2006, issued a decision that plaintiff was not
disabled.

     Plaintiff appealed the decision to the Appeals Council.  On
October 5, 2006, the Appeals Council remanded the matter to the

ALJ for further proceedings, in which the ALJ, <u>inter</u> <u>alia</u>, was to evaluate and state the weight he gave to the medical opinions of record, further consider plaintiff's residual functional capacity as to nonexertional limitations, and determine whether the opinion of a medical expert was necessary to resolve inconsistencies in the record regarding the severity of plaintiff's mental impairment.  Tr. 526.

The ALJ held two subsequent hearings, on July 20, 2007, at which plaintiff, his wife Elizabeth, consulting physician James Bruce, M.D., and vocational expert Mark McGowan, testified, and on November 20, 2007, at which treating physician Clifford Widmark, M.D., testified.

On December 28, 2007, the ALJ issued a second decision that plaintiff was not disabled.  On June 13, 2008, the Appeals Council denied plaintiff's request for further review and, therefore, the ALJ's second decision is the Commissioner's final decision for purposes of judicial review.

Plaintiff now seeks an Order from this court reversing the Commissioner's final decision and remanding the case for the payment of benefits.  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action with prejudice.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920.

Plaintiff bears the burden of proof at Steps One through Four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

On remand, at Step One, the ALJ found plaintiff did not engage in substantial gainful activity between the onset of his alleged disability on January 1, 1993, and September 30, 1999, the date he was last insured for purposes of his entitlement to disability insurance benefits.

At Step Two, the ALJ found plaintiff suffers from severe impairments of asthma, hepatitis-C, and depression.

At Step Three, the ALJ found that these impairments do not meet or equal any Listed Impairment.

At Step Four, the ALJ found plaintiff is unable to perform his past relevant work as a safety inspector.[1]  Plaintiff retains the residual functional capacity, however, to perform a full range of work at all exertional levels, subject to non-exertional limitations that preclude him from working in hot weather without

---

[1] The job of "safety inspector" was the closest job the vocational expert could identify as reflecting plaintiff's past relevant work based on plaintiff's work history report and description of his duties.

4  - OPINION AND ORDER

protection or working in "uninterrupted service to the public,"
particularly if interpersonal conflicts are likely.  Otherwise,
he has moderate limitations in working in ongoing, cooperative,
and interactive endeavors.

At Step Five, the ALJ found that during the relevant period,
plaintiff was able to perform a significant number of other
jobs that exist in the national economy, such as semi-conductor
assembler, small products assembler, and assembly machine tender.

Consistent with the above findings, the ALJ found plaintiff
was not disabled before September 30, 1999, and, therefore, he
denied plaintiff's claim for disability insurance benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  Roberts v. Shalala, 66 F.3d 179, 182
(9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet
this burden, the claimant must demonstrate the inability "to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which . . .
has lasted or can be expected to last for a continuous period of
not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a

5  - OPINION AND ORDER

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

6 - OPINION AND ORDER

**ISSUE ON REVIEW**

The only issue asserted by plaintiff on review is that the ALJ improperly evaluated and rejected the medical opinion of his treating physician, psychiatrist Clifford B. Widmark M.D., regarding plaintiff's inability to work between 1993 and 1999 based on a diagnosis of "major depression with anxiety."

In light of the limited issue on review, the court sets forth plaintiff's evidence and the medical evidence only to the extent it bears upon the severity of plaintiff's mental impairments.

**PLAINTIFF'S TESTIMONY/EVIDENCE**

This evidence is drawn from plaintiff's hearing testimony on March 17, 2006, and July 20, 2007, his disability application, his work history report, and relevant medical records.

Plaintiff was 59 years old on the date of the latter hearing and 51 years old as of the last date he was insured.  His last job, which ended in 1993, was as a quality assurance inspector at the United States Navy Shipyard in Long Beach, California.  He is a Marine Corps veteran who received a medical discharge in 1968 for a "blown knee."

Plaintiff has a history of drug and alcohol abuse before November 1979 but not since then.

Plaintiff states that in 1993, he began having panic attacks including shortness of breath.  He tried to go back to school by

enrolling in a community college but was unable to finish because of his mental state.

Since 1993, plaintiff's only work has been maintaining an apartment house in exchange for free rent.

Plaintiff first noticed panic symptoms when he worked at a shipyard breaking up lead painted ships.  In addition, he had breathing problems and "serious weakening" as a result of the pollution that made it difficult for him to climb even three flights of stairs.

Plaintiff's mental state caused him to isolate and lay in bed.  After a year, he began working out in a gymnasium a couple of hours day without actual contact with people.  Plaintiff did not think he could have worked on a consistent basis during the 1990s because of his inability on many days even to get out of bed.  During this period he became hyper-vigilant and had increasing difficulty sleeping.

Plaintiff's depression manifested itself in a "total lack of interest in life" and the inability "to relate even to [his] wife."  He has not been able to return to his pre-1993 state even with continued therapy and medication.

Plaintiff's mental state, however, improved somewhat in 2002 after Dr. Widmark began prescribing Zoloft and Trazadone to improve his moods and his ability to sleep.

## MEDICAL EVIDENCE

The relevant medical evidence pertains to treatment and evaluations plaintiff has undergone for his mental impairments, that primarily involve depression and anxiety during the time-frame from 1993-1999.  Medical reports from providers who treated or examined plaintiff after that time-frame are relevant to the extent they may shed light on plaintiff's mental status during the relevant time-period.

1.  **Medical Treatment**

**VA Health Care, Long Beach, CA - Gloria Picking, M.S.W.**
                                   **Susan Houston, Ph.D.**
                                   **James Nelson, M.D.**
                                   **Clifford Widmark, M.D.**
                                   **Carol Bergant,  L.C.S.W.**
                                   **Ann Costa, M.S.W., L.C.S.W.**

Plaintiff was treated and/or counseled in Long Beach for both physical and psychological impairments from July 1995 through October 2004.  The court focuses on the psychological impairments, which are the basis for plaintiff's alleged entitlement to disability payments.

Gloria Picking.

In May 1994, social worker Gloria Picking evaluated plaintiff's mental state and assigned a GAF score of 61, within the same range as the GAF score assigned by Dr. Wolff in February 1993, i.e., GAF of 65 (mild symptoms of depression).

In March 1995, neuropsychological testing resulted in a finding that plaintiff's functioning, including comprehension, attention, concentration, and memory, were within normal limits.

In the remainder of 1995 and through August 1997, plaintiff and his wife engaged in marital counseling with Picking on a bi-monthly basis.  When the counseling terminated in August 2007, Picking assigned plaintiff a GAF score of 72 (transient and expectable reactions to psychosocial stressors, with no more than a slight impairment in social, occupational, or school functioning).

Susan Houston, Ph.D.

In October and November 1999, plaintiff underwent four therapy session with psychology intern Susan E. Luczak, monitored by psychologist, Dr. Susan Houston.  When the sessions ended, plaintiff stated they had helped him to be less fearful.  He was offered but declined further sessions.

James Nelson, M.D.

In February 2002, psychiatrist James Nelson, M.D. diagnosed plaintiff with depression and assigned GAF scores of 70 and 75, reflecting an impairment in social, occupational, or school functioning in the mild to slight range.

In March 2002, plaintiff asked Dr. Nelson to sign a form stating he was totally disabled, which would relieve plaintiff of further obligations on his student loan.  Dr. Nelson declined

10 - OPINION AND ORDER

because he was not sure such a diagnosis was justified without further study.  In response, plaintiff and his wife sent Dr. Nelson a "threatening" fax.  Dr. Nelson was advised by VA counsel not to sign anything in the absence of clear cut evidence of a "totally disabling" diagnosis.  Dr. Nelson then noted his past contacts with plaintiff and that plaintiff "never appeared depressed during his visits."  Dr. Nelson assigned a GAF score of 60 (moderate difficulty in social, occupational, or school functioning) based on an organic affective disorder.  Plaintiff made no further appointments and received no further treatment from Dr. Nelson.

### Clifford Widmark, M.D.

Psychiatrist Clifford Widmark, assisted by social workers Carol Bergant and Ann Costa, treated plaintiff for depression from April 2002 until October 2004.

In June 2002, plaintiff called Dr. Widmark's office to obtain a refill of Trazodone because it was helping him.

In July 2002, Dr. Widmark discussed plaintiff's past treatment and future treatment goals.  Plaintiff was calm and subdued and complained of mild-moderate depression.  He did not exhibit any psychosis or suicidal/homicidal ideation.  He was referred to social worker Carol Bergant for individual therapy. Upon meeting Bergant, plaintiff assessed her intelligence and concluded she was bright enough to work with him.

11 - OPINION AND ORDER

From August through November 2002, plaintiff saw Bergant on approximately 12 occasions, during which he benefitted from discussions, _inter alia_, of his relationships, his perception of himself and how others treated him, realistic expectations, poor self-esteem, how to live with his past, how to improve his social interactions, and how others have problems dealing with his intelligence.  In October 2002, plaintiff, however, questioned whether he was getting anywhere with Bergant.  Bergant agreed there was an issue as to whether their sessions were "getting anywhere" and her participation in plaintiff's therapy ended on that note.

In January 2003, Dr. Widmark noted plaintiff experienced intermittent worsening of symptoms, but he was doing "moderately well."

In April 2003, plaintiff described his panic attacks to social worker Ann Costa but he was not receptive to taking medications to decrease his anxiety.  Dr. Widmark noted plaintiff was "generally doing ok," and that, although he has down periods, his "overall mood is more stable" and he was functioning better.

In July 2003, plaintiff reported to Dr. Widmark that he had "intermittent probl[ems] with his depression, but overall" he was "more able to manage affective states and is less prone to anger."  Dr. Widmark found plaintiff was cooperative, organized,

12 - OPINION AND ORDER

and less prone to anger.  Dr. Widmark encouraged plaintiff to "complete and mail disability forms" to the local social security office "ASAP."

In August 2003, plaintiff's depression was about the same.

In July 2004, plaintiff saw Dr. Widmark on several occasions.  He focused on obtaining paperwork from Dr. Widmark to have his Citibank student loan discharged because of his psychological impairments and stressors resulting from his pending disability claim.

During a session on July 22, 2004, Dr. Widmark spent most of his time assisting plaintiff in completing his student loan release form and a social security disability form.  Plaintiff was "under less stress" and "doing moderately well."

In August 2004, Dr. Widmark continued to report plaintiff was doing moderately well on medications.

Plaintiff stopped treating with Dr. Widmark after he moved from Long Beach, California to Klamath Falls, Oregon.

On February 7, 2006, Dr. Widmark opined in support of plaintiff's disability claim that, based on "plaintiff's account and the records," plaintiff's "symptoms had reached a significant level by January 1993," and that plaintiff suffers from "major recurrent depression, which has disabled him."  Dr. Widmark offered the same opinion in April 2007.

2. <u>**Medical Examinations**</u>.

    **Kaiser Permanente - Charles A. Wolff, M.D.**
                      **Richard Moldawsky, M.D.**

Dr. Wolff, a psychiatrist, examined plaintiff in February 1993. He noted plaintiff was angry because Dr. Wolff asked to see him initially without his wife. Plaintiff felt Dr. Wolff did not listen to him or give him what he needed, "which was a recurrent theme in his life." Dr. Wolff diagnosed plaintiff as suffering from Mixed Personality Disorder with psychosocial stressors involving his family and work.

Dr. Wolff also opined that plaintiff "is avoiding going back to work and is developing a work phobia. I do not see him as currently disabled and recommend[] that he return to work." Tr. 112. Plaintiff refused Dr. Wolff's prescription of a mild tranquilizer. Dr. Wolff assigned a GAF of 65 (mild symptoms, <u>e.g.</u>, depressed mood, mild insomnia) "with some difficulty in social, occupational, and school functioning, but generally functioning pretty well."

Dr. Moldawsky, also a psychiatrist, examined plaintiff in January 1993, for complaints of severe depression for "a few weeks" and depression over the past year, that included "fears, job pressures, and panic feelings." He diagnosed severe panic reaction and difficulty breathing.

14 - OPINION AND ORDER

**Long Beach Psychiatric Center - Lawrence Albers, M.D.**

On March 2, 1994, psychiatrist Lawrence Albers examined plaintiff for "personality changes" that were "most dramatic in the past year."  During the examination, plaintiff was cooperative and smiled but he was sarcastic and condescending at times.  Plaintiff stated he was attending school and was in the Honors program, achieving three As and one B in the last semester.  He was able to care for himself and perform other activities of daily living without assistance.

Dr. Albers diagnosed Major Depression, moderate, without psychotic features, with a current GAF of 50 (serious impairment in social, occupational, or school functioning).  He opined that plaintiff was "mildly impaired in his ability to reason, make occupational, personal, or social adjustments," and anticipated plaintiff would respond well to "appropriate psychiatric treatment in the next three to twelves months."

<u>**ANALYSIS**</u>

The ultimate issue is whether the ALJ on remand should have credited as true the opinions offered by Dr. Widmark in 2006 and 2007 that plaintiff had been disabled from 1994 to 1999 because of depression and an anxiety disorder.  That opinion was based on Dr. Widmark's treatment of plaintiff between 2002 and 2004.  The ALJ, instead, relied on treatment or examination records from

medical practitioners who treated and/or examined plaintiff
within the relevant time frame between 1994 and 1999 and who did
not conclude plaintiff was disabled at that time.

The opinions of treating physicians should be credited as
true if the ALJ fails to provide clear and convincing reasons for
rejecting them.  See Smolen v. Chater, 80 F.3d 1273, 1992 (9th
Cir. 1996).

I conclude the ALJ gave clear and convincing reasons for
rejecting Dr. Widmark's opinion regarding plaintiff's ability to
work.  Dr. Widmark offered his opinion based on his treatment of
plaintiff from 2002-2004.  The ALJ accurately pointed out
that not one other physician or psychiatrist who treated or
examined plaintiff during the applicable period between 1994 and
1999 reached the same conclusion.  To the contrary, Dr. Wolff and
Dr. Albers each separately assessed plaintiff's mental state in
1993 and 1994, respectively, and opined plaintiff suffered from
mild psychological impairments.  In addition, Dr. Nelson, who
treated plaintiff after the relevant time frame but before
Dr. Widmark, concluded plaintiff's psychological impairments were
slight and/or mild.  Moreover, as noted by the ALJ, there is
ample evidence in the record that plaintiff was focused on
obtaining disability benefits and relief from his student loan
obligations, and that Dr. Widmark became an advocate for
plaintiff in that regard.

16 - OPINION AND ORDER

On this record, I conclude the ALJ gave clear and convincing reasons for rejecting Dr. Widmark's disability opinion.  The record supports the ALJ's finding that plaintiff was not disabled between 1994 and 1999.

### CONCLUSION

For these reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action with prejudice.

IT IS SO ORDERED.

DATED this 14   day of August, 2009.


 /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

17 - OPINION AND ORDER